## J. C. CLEMENT *v.* J. T. WAFER et. al.

A married woman is responsible *civiliter* for her wrongful acts, even when done in the presence of her husband.

Plaintiff objected to defendants filing an amended answer. *Held:* That he was properly allowed to do so. The matters set up in it having an important bearing on the merits of the case.

The marriage of a minor, and domiciled in Louisiana, contracted in another State, in fraud of our laws, does not emancipate the minor, and her tutor cannot be held responsible for affording shelter and protection to his ward, and even counselling her in her difficulties.

A person who, without the consent of the tutor, persuades a minor to elope with, and marry him, in fraud of our laws, acquires no right to administer her estate, and, perhaps, no right to her person and to her society, except, so far as voluntarily yielded to him.

Granting leave to defendants who have been joined in an action for damages, to have separate trials, rests in the discretion of the Judge who tries the case.

Alleged co-trespassers, who have been sued in another Parish for the same cause of action, may be received to testify on behalf of a defendant charged also, as a co-trespasser; his position may possibly affect his credibility, but not his competency.

This was an action for damages. The jury found for the defendant; although the court did not consider the defendant free from blame, yet, in affirming the verdict, much stress is laid on the fact that plaintiff had not only acted in a manner grossly improper, but in palpable violation of law.

APPEAL from the District Court of Claiborne, *Drew, J.*
*J. M. Thomasson*, for plaintiff and appellant. *E. H. Jones* and *H. Gray*, for defendants.

MERRICK, C. J. "In his petition, filed Nov. 1855, plaintiff alleges that, on the 11th Sept. 1855, he was lawfully married in the State of Arkansas, to *Sarah A. T. Wafer.*

"That soon after his said marriage, *J. T. Wafer, Jr.*, and *Mary Owen*, his wife, *J. P. Owen* and *L. F. R. Rennolds*, all of Claiborne; and *J. W. Sim-*

CLEMENT
v.
WAFER.

*mons* and *Louisa Wafer*, his wife, *Margaret Wafer*, and *Cicily Wafer*, wife of *J. W. Dabbs*, all of Bossier Parish, entered into an agreement and conspiracy to entice, abduct and carry away his (plaintiff's) wife, and to effect a permanent separation of her from him, so as to forever deprive him of the pleasure and enjoyment of her society and the value of her services.

"That in pursuance of their said conspiracy, defendants, *Wafer* and *Owen*, waylaid the road and intercepted him and his wife on their return from Arkansas, after their marriage, seized plaintiff's horse by the bridle, threw him (plaintiff) from his buggy on the ground, and, after abusing him, compelled him to go, against his will, to the house of *Wafer*, &c.

"That some eight days after, while plaintiff and his wife were living together in connubial affection, *Margaret Wafer*, one of the conspirators, at the instance of, and by agreement with the others, went to plaintiff's and represented that *Mrs. Simmons*, one of his (plaintiff's) wife's sisters, was at the house of defendant, *Wafer*, sick, and wished to see her (*Sarah*); and, not suspecting their wicked designs, plaintiff assented, and his wife went to *Wafer's*; and that soon as they had, by their false representations and artifices, got his wife away from him, they falsely and maliciously misrepresented his character and prospects to her, and persuaded and enticed her to leave him.

"That they afterwards took her off to Red River and kept her so confined and guarded, that plaintiff could not have an interview with her; that he took some of his friends, and went to the house of *Dabbs* where she was kept, in order, if practicable, to have an interview with her, and get her away from under the pernicious and wicked influences of her abductors; that this visit resulted in an agreement between them all, that *Sarah* was to go in company with friends to the residence of her uncle, Rev. *J. T. Wafer*, Sr., in Claiborne Parish, and there remain a few days, and under his advice determine her future course—whether or not she would live with plaintiff; at the end of which time she was to go either with plaintiff or her relations, as she might choose.

"That, as agreed upon, they came to the house of her uncle, where they were followed by defendants and others, whose purpose was to take *Sarah* off again, but failing in this, defendant, *J. T. Wafer*, made affidavit, procured a warrant, and had plaintiff and his friends arrested for kidnapping plaintiff's wife; and on the next day he made another affidavit, and had a writ of habeas corpus issued by the Hon. *H. A. Drew*, Judge 17th District, commanding plaintiff to bring before said Judge, instanter, the body of his wife, &c.: and before plaintiff could do so, at the instance of said *Wafer*, he was arrested for a contempt of the authority of said Judge.

"That all of said affidavits were false, and the said proceedings wholly unfounded, malicious and vexatious, and instituted without any probable cause. That by reason of the said slanderous and false accusations and representations, the assault and battery, false imprisonment, abduction, &c., of his wife from him, and, of the said malicious, vexatious and unfounded prosecutions, plaintiff had sustained damages to the amount of $50,000 00, and prayed judgment against those residing in Claiborne Parish, in solido, for $30,000."

To this petition, defendant excepted,

1st. Because different and distinct defendants are joined for distinct causes of action.

2d. Because defendants have no joint interest in defence of this suit.

3d. Because *Mary Owen* is a married woman, not alleged to be separate in property, or person, and cannot be made liable for damages; that the acts charged, are charged to have been done in the presence, and by concurrence of her husband, and she is not liable, &c.; and

4th. Because she is not sued on account of any separate right or interest.

. The exceptions being overruled, the defendants answered separately by way of a general denial, and prayed for separate trials. Subsequently, the defendant, *James T. Wafer*, obtained leave to amend his answer. He alleged that, at the time of the pretended marriage, he was the tutor of the said *Sarah A. T. Wafer*, an orphan minor, under the age of sixteen years, the sister of respondent, who was under his personal care and protection, and residing with him at his house; that, by false representations and devices, said plaintiff clandestinely procured the said *Sarah A. T. Wafer*, the ward of defendant, to accompany him to the State of Arkansas, against the consent and without the knowledge of respondent, where, in fraud and evasion of the laws of Louisiana, the plaintiff endeavored to contract marriage with said *Sarah A. T.*, and immediately returned to Louisiana; that said *Sarah* was induced to live with him a short time under the impression that the attempted marriage was valid, when, in fact, it was not so; that plaintiff was aided in the perpretration of his fradulent designs by other persons, between whom and plaintiff, a conspiracy to bring about said pretended marriage, was engaged in and carried out. The defendant, *J. T. Wafer*, prayed that if said pretended marriage should be established, that the same be decreed to be null and void *ab initio*. This answer was severally adopted by each defendant.

A separate trial was allowed *J. T. Wafer*.

The suit seems to have been most obstinately contested on both sides in the court below, and, after occupying its attention for about three weeks, it resulted in a verdict and judgment in favor of the defendant, from which the plaintiff appeals.

Four hundred and fifty-eight pages of record, and twenty-two bills of exceptions, testify to the industry and zeal of the parties and their counsel.

The scenes of violence which have been detailed by witnesses, seem rather to belong to a remote border settlement, than to the law abiding community, with its magistrates, courts and eminent bar, in the midst of which they occurred. A jury of the vicinage, acquainted with localities and witnesses, has found for the defendant, and the plaintiff, exercising a constitutional right, demands that we shall revise the proceedings of the lower court, the evidence and the finding of the jury, and pronounce upon the legality of the same.

The first question which naturally arises in the case is presented by the defendants' exception. We think all the charges of abduction, and of enticing away plaintiff's wife, the alleged malicious misrepresentations, the false imprisonment, slander and assault and battery, are substantially laid in plaintiff's petition, as done in pursuance and in consequence of a conspiracy among all of the defendants. The petition is not, therefore, obnoxious to the charge that distinct causes of action against different persons are joined in it. A married woman is responsible *civiliter* under our law for her wrongful acts, even when done in the presence of her husband. *Brown*, tutor, v. *Crocket*, 8 Ann. 34. The exceptions were properly overruled.

We discover no error in the allowance of defendants' amended answer. It did not authorize the defendant to demand a dissolution of the marriage it is

true, but matters were set up in it having an important bearing upon the merits: of the case, if they were not a complete justification to a portion of plaintiff's action.  As a marriage of a minor domicilled in Louisiana, contracted in another State, in fraud of our laws, does not emancipate such minor, (4 Ann., 375; *Babin* v. *Lablanc*, 12 Ann.) the tutor of such minor cannot be rendered responsible for affording shelter and protection to his ward, and even counseling her in her difficulties.  The person who, without the consent of the tutor,. persuades a minor to elope with him and marry him in fraud of our laws, ac-- quires no right to administer her estate, and perhaps, no right over her person and to her society, except so far as voluntarily yielded him.  The amended an-- swer was, therefore, properly received.

The Judge did not err in awarding a separate trial to the defendant, *James: T. Wafer.*

The Judge, in the exercise of a reasonable discretion, has the power to di- rect a separate trial as to one or more of the defendants.  In this case, the Judge may have suspected, perhaps, that some of the defendants were merely made- parties in order to exclude their testimony, and that the purposes of justice would be best attained by ordering, first, a trial of the defendant, who was- mainly charged with an agency in all the transactions.  9 Martin's Rep., 397;. 5 N. S., 264; 17 L. R., 419.

The court did not err in allowing the testimony of the alleged co-trespassers who had been sued for the same causes of action in another Parish, to be given in evidence in favor of the defendants.  The plaintiff, by his mere allegations. in another suit, cannot discredit a witness or render him incompetent.  Such. charge may possibly go to his credibility, under some circumstances, but not to his competency.

On the merits of the case, we observe that the plaintiff does not come before this court in the attitude of a suitor with clean hands.  The evidence shows that the plaintiff is a man of mature judgment, being thirty-five or forty years of age; that he cannot be presumed ignorant, for he belongs to one of the learned professions; yet, regardless of his position and the duty he owed the the laws of his adopted State, he induced an orphan school girl, hardly grown to womanhood, clandestinely to leave the house of her tutor and accompany him to a neighboring State, and there, in a public highway, caused himself to be married to her by a clergyman who, like himself, was a resident of Louisi- ana, to the violation of whose laws,. he also had lent his holy office.

Again we find him with a band of sixteen or seventeen armed men invading the house of a brother-in-law of his bride, to which she had gone, and there, by violence,. compelling a consent that she should accompany him a long dis- tance to another relative; we find him driving away her sisters and relatives, guarding her on the way with sentinels armed with loaded guns, and finally,. in order to evade the process of our courts, sending her, in the night-time with an armed guard, to Arkansas, where she appears also to have been detained. several days before she was finally permitted to return to her friends.

The jury might well suppose that if the wife would not become reconciled to him when she was entirely among his friends, (and in whose company she resolutely persisted in refusing to live with the plaintiff,) that it was not proba- ble that she was acting under an improper influence of the defendant who had constantly said that she might live with the plaintiff if she wished.

The conduct of the defendant cannot, in all respects, be commended, but it

CLEMENT
*v.*
WAFER.

must be observed that he was the natural protector of the young lady who had not become emancipated by her marriage, and whose property, at least, was to remain under his charge as her tutor until her majority. The jury do not seem to have credited the proof tending to establish the alleged assault and battery near Terryville, on the plaintiff's return from Arkansas, from his fugitive marriage.

We think the court erred in excluding a part of *Sandefor's* answers to the 9th, 10th, 14th, 15th and 17th interrogatories, but under the view we take of the case, we do not think it would materially aid the plaintiff's case were a new trial to be granted. Moreover, the testimony of *Sandefor*, has been attacked as unworthy of credit. It is unsustained by counter evidence, and it would be trifling with justice to remand the case upon his testimony upon a point which could have very little or no weight against the present defendant, and the impression created by the consideration of which is insufficient to incline us to set aside the verdict.

In the matter of plaintiff's arrest, the want of probable cause, has not been established.

Upon the whole, we think that the interest of the public as well as of these parties, requires that there shall be an end of this litigation.

If the plaintiff has failed in his proceedings, he must remember that the minor, as well as any other person, is under the protection of the law, and that his own fraud upon the laws which he now so earnestly invokes, his disregard of the rights of others, and his armed violence in asserting his supposed rights, as well as the evasion of the process of our courts were not only the primary and principal causes of the difficulties between himself and the defendant, but are also circumstances calculated to throw discredit upon his cause.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be affirmed with costs.